Scheduled for Oral Argument on _____

IN THE

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

### 12-5173

◆◆

ENRIQUE ACOSTA,

*Plaintiff-Appellant,*

—v.—

MICHAEL G. NELSON, Doctor, BETSY HERNANDEZ-RICOFF, Doctor,

*Defendants-Appellees.*

RENA ANDOH,

*Appointed Amicus Curiae for Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

## AMICUS CURIAE BRIEF OF PLAINTIFF-APPELLANT

RENA ANDOH, ESQ.
SHEPPARD MULLIN RICHTER
  & HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 653-8700

*Appointed Amicus Curiae for
  Appellant*

## CERTIFICATE AS TO PARTIES, RULING, AND RELATED CASES

**A.     PARTIES AND *AMICUS CURIAE***

**<u>Plaintiff-Appellant</u>**

Enrique Acosta, Federal Prisoner Number 46437-004
Federal Correctional Institution
Coleman Medium
PO Box 1022
Coleman, FL 33521

**<u>Defendants-Appellees</u>**

Michael G. Nelson
Betzy Hernandez-Ricoff

For Defendants-Appellees:
Judith A. Kidwell
R. Craig Lawrence
U.S. Attorney's Office, Civil Division
555 4th Street, N.W.
Washington, DC 20530

No *amicus curiae* appeared before the District Court. By order of this Court

dated March 7, 2013, Rena Andoh was appointed as *amicus curiae* in favor of

plaintiff-appellant, and appearances were then entered as follows:

**<u>Court-Appointed *Amicus Curiae*</u>**

Rena Andoh
Sheppard Mullin Richter & Hampton LLP
1300 I Street, N.W.
Washington, DC 20005

**B.      RULING UNDER REVIEW**

The April 24, 2012 Memorandum Opinion and Order by United States District Court Judge Robert L. Wilkins is under review.  The Memorandum Opinion and Order are contained in the Joint Appendix at pages A-249 – A-257. There is no official citation to the Memorandum Opinion.

**C.      RELATED CASES**

Court-appointed *amicus curiae* state that as far as we are aware, (i) no other appeals in or from the civil action below have been before this or any other court other than the previous ruling in this case from the Eleventh Circuit of Appeals, 281 Fed. Appx. 906, which is contained in the Joint Appendix at pages A-50 – A-58, and (ii) there are no related cases before either this or any other court, as delineated in Circuit Rule 28(C).

/s/ Rena Andoh
—————————————————————
Rena Andoh
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1300 I Street, N.W.
Washington, DC 20005
Telephone: (202) 218-0000

30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700

## RULE 26.1 DISCLOSURE STATEMENT

Rena Andoh, an associate at Sheppard Mullin Richter & Hampton LLP, is appearing as court-appointed amicus curiae.  Sheppard Mullin Richter & Hampton LLP is a private law firm structured as a limited liability partnership, and no parent company or publicly-held entity has any partnership share or other ownership interest.  Neither Sheppard Mullin Richter & Hampton LLP nor any of its partners have any financial interest in this litigation.

# GLOSSARY

| | | |
|---|---|---|
| BOP | = | Federal Bureau of Prisons |
| HSD | = | Health Services Division |
| Level B | = | "Medically Necessary – Non Emergent."  One of the five major levels of care within Program Statement P6031.01, which provides guidance with respect to medical care for prisoners. |
| Level C | = | "Medically Acceptable – Not Always Necessary."  One of the five major levels of care within Program Statement P6031.01, which provides guidance with respect to medical care for prisoners. |
| OMD | = | Office of Medical Designations |
| URC | = | Utilization Review Committee |

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULING, AND RELATED CASES ...............i

RULE 26.1 DISCLOSURE STATEMENT...........................................iii

GLOSSARY..................................................................................iv

TABLE OF CONTENTS................................................................v

TABLE OF AUTHORITIES ........................................................ vii

JURISDICTIONAL STATEMENT ....................................................i

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................2

STATEMENT OF CASE .................................................................2

STATEMENT OF FACTS ................................................................4

    A.    Initial Injury And Diagnosis..................................4

    B.    Mr. Acosta Files His Administrative Requests For Assistance ...........5

    C.    Mr. Acosta's Transfer Request Reaches Defendants...........................7

    D.    Mr. Acosta's Condition ........................................9

    E.    Regulations Guiding The OMD And BOP ........................9

SUMMARY OF ARGUMENT .........................................................11

ARGUMENT .................................................................................13

    I.    STANDARD OF REVIEW .................................................13

    II.    CONVERSION TO SUMMARY JUDGMENT WAS IMPROPER .................................................15

a.    The Court Of Appeals For The Eleventh Circuit Has Already Found That Acosta Has Stated A Cognizable Claim ........................................................................15

b.    The Court Improperly Converted Appellees' Motion To Dismiss To A Motion For Summary Judgment Without Affording Appellant Any Discovery ........................................16

III.   THE GRANT OF SUMMARY JUDGMENT TO APPELLEES WAS REVERSIBLE ERROR ............................................................18

a.    Material Issues Of Fact Remain With Respect To Whether Mr. Acosta Was Subjected To A Substantial Risk Of Serious Harm ...............................................................19

b.    Material Issues Of Fact Remain With Respect To Whether Appellees Failed To Take Reasonable Measures To Abate Mr. Acosta's Condition.............................................21

IV.   THERE IS A MATERIAL ISSUE OF FACT REGARDING WHETHER APPELLEES ARE ENTITLED TO QUALIFIED IMMUNITY ........................................................................................23

CONCLUSION ........................................................................................24
CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page(s)

Cases

Arocho v. Nafziger
    367 Fed. Appx. 942 (10th Cir. 2010)...................................................22

Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics
    403 U.S. 388 (1971) ("Bivens") ...............................................*passim*

Brown v. District of Columbia
    514 F.3d 1279 (D.C. Cir. 2008)...............................................17, 21

Bushway v. Bureau of Prisons
    198 F.3d 244, No. 97-5282, at *2-3 (6th Cir. 1999)..........................18

*Crocker v. Piedmont Aviation, Inc.
    49 F.3d 735 (D.C. Cir. 1995), cert. denied, 516 U.S. 865 (1995) ......................17

*Estelle v. Gamble
    429 U.S. 97 (1976)...................................................20, 22, 24

*Farmer v. Brennan
    511 U.S. 825 (1994)...................................................19, 20, 24

Farmer v. Moritsugu
    163 F.3d 610 (D.C. Cir. 1998)...................................................24

Gay v. Wall
    761 F.2d 175 (4th Cir. 1985) ...................................................15, 18

*Greeno v. Daley
    414 F.3d 645 (7th Cir. 2005) ...................................................21, 22

*Gutierrez v. Peters
    111 F.3d 1364 (7th Cir. 1997) ...................................................19, 20, 21, 22

Haines v. Kerner
    404 U.S. 519 (1972)...................................................14, 17

*Authorities upon which we chiefly rely are marked by asterisks

LaShawn A. v. Barry
    87 F.3d 1389 (D.C. Cir. 1996) (en banc)............................................................17

Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.
    475 U.S. 574 (1986)................................................................................13

McElligott v. Foley
    182 F.3d 1248 (11th Cir. 1999) .........................................................16

Neal v. Kelly
    963 F.2d 453 (D.C. Cir. 1992)...........................................................14

Richardson v. United States
    193 F.3d 545 (D.C. Cir. 1999)...........................................................14

Tao v. Freeh
    27 F.3d 635 (D.C. Cir. 1994)............................................................14

Taylor v. FDIC
    132 F.3d 753 (D.C. Cir. 1997)...........................................................14

Twist v. Meese
    854 F.2d 1421 (D.C. Cir. 1988).........................................................13

United States v. Spicer
    57 F.3d 1152 (D.C. Cir. 1995)...........................................................14

Young v. Quinlan
    960 F.2d 351 (3d Cir. 1992) .............................................................18

Statutes

28 U.S.C. § 1294.................................................................................1

28 U.S.C. §§ 1331 and 1332 .................................................................1

Other Authorities

Eighth Amendment ..............................................................1, 2, 19, 20

Fed. R. Civ. P. 12(b)(6)......................................................................18

Fed. R. Civ. P. 56 ..........................................................................13, 14

## JURISDICTIONAL STATEMENT

1.  Plaintiff Enrique Acosta ("Mr. Acosta" or "Appellant"), proceeding *pro se*, alleged violations of the Eighth Amendment pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) ("<u>Bivens</u>").  The District Court for the Northern District of Florida and later the District Court for the District of Columbia had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.

2.  This appeal stems from the grant of summary judgment on all counts in favor of the defendants Dr. Michael G. Nelson and Dr. Betzy Hernandez-Ricoff by means of a Memorandum Opinion and Order issued by the District Court for the District of Columbia on April 24, 2012.  (A-249.)  Mr. Acosta timely submitted a notice of appeal on May 25, 2012.  (A-258.)

3.  Appellate jurisdiction rests on 28 U.S.C. § 1294.  Appellees moved for summary affirmance, and the Court denied that motion by means of Order dated March 7, 2013.  (A-20.)

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Did the District Court improperly convert the motion to dismiss the *pro se* claim of Enrique Acosta, a prisoner, to a motion for summary judgment without first affording him discovery?

2.     If the motion was improperly converted, should the motion to dismiss have been denied because the Court of Appeals for the Eleventh Circuit previously held that Mr. Acosta had a cognizable cause of action and that determination constitutes law of the case?

3.     Did the District Court err in granting summary judgment in favor of Appellees because issues of material fact remained regarding whether Appellees violated Mr. Acosta's Eighth Amendment rights as a result of their denying him surgical treatment of his chronic right elbow ankylosis under Bivens?

## STATEMENT OF CASE

Petitioner Enrique Acosta originally filed his complaint, *pro se*, in the Northern District of Florida on April 19, 2007.  (4/19/2007 Complaint, A-22.)  The complaint originally alleged Eighth Amendment violations against Scott Middlebrooks, Dr. Alfredo Guzman, Dr. Tito Tanguilig, and Mid-Level Practitioner ("MLP") M. Githens.  (Id.)  Acosta filed an amended complaint on August 29, 2007.  (8/29/2007 Amended Complaint, A-40.)  The Northern District

-2-

of Florida dismissed the amended complaint with prejudice, based on the report
and recommendation of a magistrate judge, on October 12, 2007.  (N.D. Fl.,
Docket 18, A-5.)  Acosta appealed the dismissal to the Court of Appeals for the
Eleventh Circuit on October 26, 2007.  (N.D. Fl., Docket 21, A-5.)

On June 16, 2008, the Court of Appeals for the Eleventh Circuit affirmed in
part, reversed in part, and remanded for further proceedings.  (A-50.)  In particular,
that court held that Mr. Acosta had adequately pled a Bivens action with respect to
the Office of Medical Designation's ("OMD's") failure to treat his elbow.  (Id., at
A-57.)  Upon remand, the case was referred back to the magistrate for further
action.  (N.D. Fl., Docket 50, A-8.)  On August 18, 2008, the magistrate judge then
determined that the defendants to the action should be (1) the Central Office
Medical Designator, and (2) Harrell Watts.  (N.D. Fl., Docket 51, A-8.)

The then-nominal defendants filed a motion to dismiss or, in the alternative,
for summary judgment, on February 2, 2009.  (N.D. Fl., Docket 67, A-11.)  During
the summary judgment briefing process, the magistrate judge determined that the
defendants should in fact be Dr. Michael Nelson and Dr. Betzy Hernandez-Ricoff.
(N.D. Fl., Docket 77, A-12.)  In the same order and report and recommendation,
the magistrate judge recommended that the motion to dismiss be denied without
prejudice, and that the action be transferred to the District Court for the District of

Columbia for further proceedings.  (Id.)  The district court judge adopted the magistrate's recommendations on June 22, 2009.  (N.D. Fl., Docket 78, A-13.)

Upon the transfer of the action to the District Court for the District of Columbia, the Appellees moved to dismiss or, in the alternative, for summary judgment, on January 8, 2010.  (D.D.C., Docket 7, A-16.)  The motion was converted to one for summary judgment and granted by the court on April 24, 2012, with judgment entered for the Appellees.  (4/24/2012 Opinion and Order, A-249.)  Acosta noticed his appeal of the grant of summary judgment to this Court on May 25, 2012.  (5/25/2012 Notice of Appeal, A-258.)

On September 10, 2012, Appellees filed a motion with this Court for summary affirmance, which was denied by this Court by Order dated March 7, 2013.  (3/7/2013 Order, A-20.)  In the same Order, Rena Andoh of Sheppard Mullin Richter & Hampton LLP was named as court-appointed *amicus curiae* to present positions in support of Acosta.  (Id.)

## STATEMENT OF FACTS

### A.    Initial Injury And Diagnosis

Appellant Enrique Acosta suffered a debilitating elbow injury sometime around 1983.  (7/11/2006 Referral Request, A-80.)  On February 8, 2005, Mr. Acosta's doctor at the federal prison in Jessup, Georgia, where he was then incarcerated, ordered an evaluation of Mr. Acosta's arm.  (2/8/2005 Consultation

Sheet, A-119.)  The evaluation was done by orthopedic surgeon Dr. Douglas Hein on March 9, 2005.  (Id.)  Dr. Hein diagnosed Mr. Acosta with right elbow ankylosis and a segmental defect of the ulna.  (Id.)  Dr. Hein then recommended surgical treatment, stating:  "This is a difficult problem that can be improved by repair of defect and debridement of elbow – would recommend this be done at Rochester."  (Id.)

It is undisputed that the surgery recommended by Dr. Hein did not occur.  Mr. Acosta was transferred from the prison in Jessup, Georgia, to a prison in Marianna, Florida, on or around April 6, 2005.  (1/27/2009 Wombacher Decl., A-84.)  In the intervening time period between March 9, 2005, and March 13, 2006, Mr. Acosta was seen at a Chronic Pain Clinic twice and sought additional medical care for his elbow four times.  (1/30/2009 Pelt Decl., A-116 – A-117.)

## B.    Mr. Acosta Files His Administrative Requests For Assistance

On March 13, 2006, Mr. Acosta filed an "Attempt at Informal Resolution — Request for Administrative Remedy," stating "I suffer from extreme pain and have been to sick call several times and seen several doctors who tell me I need to see a surgeon but I have been waiting for over a year now and nothing have been done."  (3/9/2006 Attempt at Informal Resolution, A-33.)  Mr. Acosta went on to state "I need this done I have a lot of time left and, with no hope of getting out to get this done out on the street, and it has been long enough to have this resolved, I

-5-

need to see a surgeon as soon as possible." (Id.)  The correctional counselor with whom Mr. Acosta filled out the form stated:  "A referral to an orthopedic surgeon has been written and will be reviewed by the utilization review committee." (Id.)  The Attempt at Informal Resolution was not successfully resolved, however, resulting in the Request for Administrative Remedy being submitted for review on April 18, 2006.  (Id.)

The Request for Administrative Remedy was noted as received by Scott A. Middlebrooks, warden of FCI Marianna on August 10, 2006.  (8/22/2006 Response, A-35.)  Middlebrooks stated on August 22, 2006:  "A request for a medical transfer to a Bureau of Prisons Medical Center for surgical repair of your arm has been submitted to the Central Office.  You will be notified of the response from the Central Office when it is received." (Id.)

That request had already, in fact, been submitted by Dr. Tito Tanguilig, with the review and approval of Dr. Alfredo Guzman, on July 11, 2006.  (7/11/2006 Referral Request, A-79.)   In the request, Dr. Tanguilig noted that "[p]atient will require long term inpatient care/physical rehabilitative services" and recommended surgery.  (Id.)  Dr. Tanguilig further stated that "[t]here is gross deformity of the right elbow with limited flexion (~90 degrees) and extension (~140 degrees)," and noted that "use of his right hand is limited by his inability to fully extend and flex the elbow." (Id., A-80.)

-6-

On October 10, 2006, the Regional Director found:

> On June 6, 2006, your case was reviewed by the Regional Utilization Review Committee, Regional Health Systems Administrator, and Regional Medical Director.  Your arm deformity is the result of an injury that took place in 1984.  This is a long-standing injury that will require extensive surgery and post surgical rehabilitation.  In order to enhance your care and preserve security, your care is best rendered at a Federal Medical Center.  Accordingly, the Warden's response … is correct … a transfer request was sent to the Office of Medical Designations (OMD) in the Central Office.  If the request for transfer is approved, OMD will coordinate your transfer in the near future.  Accordingly your Regional Administrative Remedy Appeal is denied.

(10/10/2006 Regional Response, A-37.)

## C.    Mr. Acosta's Transfer Request Reaches Defendants

Mr. Acosta, apparently not understanding that the transfer request had been made because the treatment he needed was not available at Marianna, then appealed the Southeast Regional Director's denial to the General Counsel.  (1/10/2007 National Response, A-39.)  In the intervening time period, the OMD reviewed Mr. Acosta's transfer request which had been sent by Mr. Middlebrooks to the OMD.  (Id.)

When the OMD received Mr. Middlebrooks' transfer request, defendant Michael B. Nelson issued a memorandum to the Chief Executive Officer of Marianna prison on September 6, 2006, stating:  "We have reviewed your referral received on July 12, 2006, which requested a transfer to medical Referral Center for the above-named inmate.  Your request is denied.  Per the Chief Health

-7-

Programs, HSD, please provide a description of his functional limitations, has he been stable, or getting worse?" (9/6/2006 Memorandum, A-126; Undated Nelson Decl., A-128.)

On September 11, 2006, an addendum was added to Mr. Acosta's Referral Request form, apparently in response to Dr. Nelson's request. (7/11/2006 Referral Request, A-80.) That September 11 addendum recorded that Mr. Acosta's range of motion had actually decreased slightly: while on July 11, 2006, his range of motion was measured at ~90 degrees to ~140 degrees, on September 11, 2006, Mr. Acosta's range of motion was measured at only ~90 degrees to ~135 degrees. (Id.)

Defendant Betzy Hernandez-Ricoff, M.D., the Regional Medical Director for the Federal Bureau of Prisons ("BOP") for the Southeast Region, then reviewed Mr. Middlebrooks' transfer request "with an addendum dated September 11, 2006, seeking to transfer inmate Acosta to a Medical Referral Center. I denied that request based upon available medical information, information indicating that limitations in inmate Acosta's range of motion were not affecting his activities of daily living, and the scope of medical services provided by the BOP." (Undated Hernandez-Ricoff Decl., A-130 – A-131.) The OMD's denial was issued on September 24, 2006. (9/24/2006 Memorandum, A-129.) On January 10, 2007, Mr. Acosta was informed as a result of his appeal to the General Counsel that the OMD "reviewed your medical record and determined your condition can be

-8-

managed conservatively and the request was denied.  As such, surgery of your

right arm is denied." (1/10/2007 National Response, A-39.)

###### D.     Mr. Acosta's Condition

The record indicates, however, that Mr. Acosta's medical condition is quite

serious.  A January 30, 2009, declaration from Natalie Pelt, Assistant Health

Services Administrator, for example, stated that Mr. Acosta had sought attention at

Marianna's Chronic Care Clinic seven times between July of 2005 and September

of 2009, approximately once every three-to-six months.  (1/30/2009 Pelt Decl., A-

116.)  Ms. Pelt's declaration further stated that Mr. Acosta sought care specifically

for his elbow no less than nineteen times between October of 2003 and September

of 2007.  (Id., at A-117.)  Further, in a declaration filed with the District Court for

the District of Columbia on February 22, 2010, Mr. Acosta specified that, among

other things, he was unable to eat or write with his right hand, he was unable to

wipe himself with toilet paper, brush his teeth, or shave his face.  (Acosta Decl., A-

238 – A-239.)  Mr. Acosta further stated that he had limited ability to press his

right hand, to pick up items with his right hand, or to get himself up from a seated

position using his right arm.  (Id.)

###### E.     Regulations Guiding The OMD And BOP

The OMD and BOP are guided by certain regulations, including Number

P6031.01, Patient Care.  (1/15/2005 Program Statement P6031.01, A-132.)  The

"Scope of Services – Categories of Care" section specifies that the BOP provides "five major levels of care that define care provided to inmates." (Id., at A-135.) Of those five levels, Level B, Medically Necessary – Non Emergent, includes "significant pain or discomfort which impairs the inmates participation in activities of daily living." (Id., at A-136.) The description goes on to state that "Examples of conditions considered medically necessary, non-emergent include, but are not limited to: chronic conditions…." (Id.) Level C, Medically Acceptable – Not Always Necessary, includes "Medical conditions which are considered elective procedures, when treatment may improve the inmate's quality of life." (Id.) Examples of Level C care include joint replacement and reconstruction of the anterior cruciate ligament. (Id.)

Level B treatment does not require additional review before the recommended care is provided to inmates. (Id., at A-135.) Level C treatment requires review by the Utilization Review Committee ("URC") for the prison in which the prisoner is housed. (Id., A-135 – A-136.) Factors the URC may consider include:

- The risks and benefits of the treatment;
- Available recovery;
- Natural history of the condition; and
- The effect of the intervention on inmate functioning in his/her activities of daily living.

-10-

(Id.)  The URC must select one or more of the following, to address each case

presented to it:

- Approve the request without modification;
- Refer the inmate for further evaluation to a staff physician;
- Refer the inmate for further evaluation to a specialty consultant;
- Put the inmate on a waiting list …;
- Determine that the procedure is counterindicated, due to unacceptable risk to the inmate if it is performed; or
- Deny the request for the procedure.

(Id., A-138.)  "As chair of the committee, the Clinical Director is the final

authority for all URC decisions."  (Id.)

## SUMMARY OF ARGUMENT

Enrique Acosta, who has been suffering from a debilitating elbow injury for

many years, has been denied the surgery that could alleviate his pain and allow him

to resume performing tasks with his dominant arm that most of us take for granted

as part of their daily lives — tasks such as writing, brushing his teeth, and eating.

Consulting Orthopedic Surgeon Douglas Hein stated that it was a "difficult

problem that can be improved by repair of the defect," and recommended surgery.

Commenting on the seriousness of Mr. Acosta's condition, Dr. Tanguilig, as

reviewed by Dr. Guzman, stated that Mr. Acosta had a "gross deformity" of his

right elbow which would require "long term inpatient care/physical rehabilitative

services."   The Regional Director, when reviewing Mr. Acosta's file, also noted

that Mr. Acosta's condition was sufficiently severe to warrant "extensive surgery and post surgical rehabilitation."

Notwithstanding all of these recommendations, Mr. Acosta was denied this surgery by Appellees even after the URC made the determination that he should be transferred so that the procedure could be performed at another institution. Such a denial by Appellees amounts to intentional interference in Mr. Acosta's treatment once prescribed, and can be the basis for a successful Bivens claim.

Indeed, the Court of Appeals for the Eleventh Circuit has already held that Mr. Acosta stated a Bivens claim sufficient to survive a motion to dismiss. Despite the ruling of the Eleventh Circuit, which is law-of-the-case, Appellees moved to dismiss Mr. Acosta's complaint once again and, in the alternative, for summary judgment, after the action was transferred to the District Court for the District of Columbia. Notwithstanding the undisputed fact that Mr. Acosta has not been accorded any discovery since he filed this action in 2007, the District Court converted Appellee's motion to dismiss into a motion for summary judgment and granted it. Summary judgment should not have been granted here.

Such a conversion was improper due to the lack of discovery accorded Mr. Acosta. Further, the grant of summary judgment was improper because Mr. Acosta has supported the allegations contained in his complaint — the very complaint that the Eleventh Circuit already held states a cause of action which, if

-12-

proven, would entitle Mr. Acosta to relief — by an affidavit in opposition to Appellees' motion for summary judgment that supports the allegations contained in his complaint. Appellees' evidence submission in support of summary judgment does not contradict the allegations in Mr. Acosta's complaint.

Finally, there remain serious questions of material fact regarding the seriousness of Mr. Acosta's injury and whether Appellees were deliberately indifferent to Mr. Acosta's condition. For at least these reasons, the grant of summary judgment was improper, and Mr. Acosta's claims should be remanded to the District Court for trial and/or discovery to occur.

## ARGUMENT

## I. STANDARD OF REVIEW

Summary judgment is appropriately granted where there is no genuine issue of material fact, which has been explained by this Circuit as a circumstance where the evidence is "so one-sided that one party must prevail as a matter of law." Twist v. Meese, 854 F.2d 1421, 1428 (D.C. Cir. 1988) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, (1986)); Fed. R. Civ. P. 56. "[A]ll inferences to be drawn ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The standard of review for a grant of summary judgment is

de novo.  Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994); United States v. Spicer, 57 F.3d 1152, 1159 (D.C. Cir. 1995).

This Court has previously noted that the general proposition in Haines v. Kerner, 404 U.S. 519, 520-21 (1972), specifically that *pro se* litigants should be held to less stringent standards, applies to all court filings, not just complaints.  See Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999) (holding that "[c]ourts must construe pro se filings liberally").  Mr. Acosta's amended complaint, opposition papers, and other filings should therefore be liberally construed.[1]

The failure to permit discovery prior to granting a motion for summary judgment which was converted from a motion to dismiss in a circumstance such as here, where the District Court gave no indication in its decision regarding whether it considered a need for discovery, is reviewed *de novo*, and not for abuse of discretion.  See Taylor v. FDIC, 132 F.3d 753, 766 (D.C. Cir. 1997).  Absent such lack of indication, courts will review the denial of discovery for abuse of discretion.  See Gay v. Wall, 761 F.2d 175, 178 (4th Cir. 1985).

---

[1] When a court wishes to convert a motion to dismiss to a motion for summary judgment, that court must give the parties a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992) (quoting Fed. R. Civ. P. 12(b)(6)).  Further, this Court has "stress[ed] … that mere technical notice of the requirements of the summary judgment rule 'cannot be expected in every case fully to compensate for the handicaps resulting from detention and indigency.'"  Id. (quoting Hudson v. Hardy, 412 F.2d 1091, 1094-95 (D.C. Cir. 1968)).

-14-

## II.     CONVERSION TO SUMMARY JUDGMENT WAS IMPROPER

### a.     The Court Of Appeals For The Eleventh Circuit Has Already Found That Acosta Has Stated A Cognizable Claim

The Court of Appeals for the Eleventh Circuit has already determined that

Mr. Acosta's complaint alleged sufficient facts to state a claim of deliberate

indifference and reversed the dismissal of the amended complaint.  (6/16/2008

Opinion and Order, A-57.)  Specifically, the Eleventh Circuit stated:

> Acosta's complaint alleges sufficient facts to state a claim of
> deliberate indifference against unknown named personnel in the
> Office of Medical Designation … Acosta argued, in effect, that this
> level of medical care was "so cursory as to amount to no treatment at
> all," and was sufficient to establish a claim of deliberate indifference.

(Id., quoting Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir.

1985); citing to McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and

Bivens, 403 U.S. at 397.)  Those unnamed personnel, as explained above, were

later identified by the magistrate judge in the Northern District of Florida as the

Appellees in this action.  (N.D. Fl., Docket 77, A-12.)

Furthermore, Mr. Acosta has supported the allegations in his complaint with

an affidavit in opposition to summary judgment, and nothing in the Appellees'

summary judgment submissions contradicts the factual allegations contained in

Mr. Acosta's complaint — the very complaint that the Eleventh Circuit has already

found states a viable Bivens claim, if proved.  As a result, the doctrine of law-of-

the-case requires that the case be remanded for trial, or at least additional

-15-

discovery.  "When there are multiple appeals taken in the course of a single piece of litigation, law-of-the-case doctrine holds that decisions rendered on the first appeal should not be revisited on later trips to the appellate court." Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 739 (D.C. Cir. 1995), cert. denied, 516 U.S. 865 (1995) (quoted by LaShawn A. v. Barry, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc)).  In any event, as discussed below, even if the Court finds that conversion to summary judgment was proper, there are material issues of fact precluding summary judgment (and further justifying a remand to permit discovery to occur).

> **b.    The Court Improperly Converted Appellees' Motion To Dismiss To A Motion For Summary Judgment Without Affording Appellant Any Discovery**

This Court has previously noted that where, in particular, the plaintiff is proceeding *pro se*, the plaintiff "should have the chance to prove the case he has sufficiently pled."  Brown v. District of Columbia, 514 F.3d 1279, 1285 (D.C. Cir. 2008); see also Haines, 404 U.S. at 520-1 (finding that *pro se* complaint, under lenient standard, "entitled [plaintiff] to an opportunity to offer proof").  Here, as explained above in Section II.a, supra, the Eleventh Circuit Court of Appeals has already determined that Mr. Acosta has a sufficiently pled complaint.  (FLDC 47, page 8.)

-16-

The failure to permit discovery prior to granting a motion for summary judgment in a circumstance such as here should itself warrant reversal of a grant of summary judgment.  See Bushway v. Bureau of Prisons, 198 F.3d 244, No. 97-5282, at *2-3 (6th Cir. 1999) (finding that grant of summary judgment on plaintiff's retaliation claim was reversible error because a facially valid claim of retaliation was raised, but the opportunity to conduct discovery was not provided); Young v. Quinlan, 960 F.2d 351, 361, 365 (3d Cir. 1992) (reversing grant of summary judgment against a *pro se* prisoner and granting a motion to compel discovery, noting that the reversal was based on the fact that "Young clearly stated an actionable claim," and further commenting that "Young has never had discovery in this matter"); Wall, 761 F.2d at 177 (with respect to a *pro se* plaintiff "it was the lack of a reasonable opportunity for discovery which made conversion of the Rule 12(b)(6) motion 'wholly inappropriate'").

In addition, in the present case, there is substantial and material documentation and witness testimony lacking from the record that should be obtained through questioning, deposition, or trial.  For example, there has been no discovery regarding what medical options are available to Mr. Acosta to treat his arm within the BOP system.  Further, there has been no opportunity to question or depose Dr. Hein regarding his additional diagnosis, or Drs. Tanguilig or Guzman regarding Dr. Tanguilig's original treatment recommendation.  There has been no

-17-

opportunity to discover why the URC chose to recommend a transfer for Mr. Acosta, or what information the URC reviewed in reaching that decision.  Most critically, and notwithstanding Appellees' conclusory and opaque affidavits submitted in support of Appellees' summary judgment motion, Mr. Acosta has not had any opportunity to question or depose Appellees about what information they reviewed before reaching their decision to deny treatment, and why they overruled the URC's recommendation for transfer and treatment.

Here, given the holding by the Eleventh Circuit that Mr. Acosta has a cognizable claim, and the lack of discovery in the action, reversal of summary judgment is appropriate in order to provide Mr. Acosta with the opportunity to prove his claims.

## III.   THE GRANT OF SUMMARY JUDGMENT TO APPELLEES WAS REVERSIBLE ERROR

A prison official may be held liable through a <u>Bivens</u> Eighth Amendment action where that official:  (1) "knows that inmates face a substantial risk of serious harm," and (2) "disregards that risk by failing to take reasonable measures to abate it."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994).  To succeed in a <u>Bivens</u> claim based on a medical condition, the condition need not be life-threatening, nor must the treatment denied be essential.  <u>See</u> <u>Gutierrez v. Peters</u>, 111 F.3d 1364, 1370 (7th Cir. 1997) ("it is clear that the Supreme Court contemplated that medical conditions far less critical than 'life-threatening' would be encompassed by the

-18-

term ['serious']" when deciding <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976)).  An

official will "not escape liability if the evidence showed that he merely refused to

verify underlying facts that he strongly suspected to be true, or declined to confirm

inferences of risk that he strongly suspected to exist."  <u>Farmer v. Brennan</u>, 511

U.S. at 843, n.8.

> ### a.    Material Issues Of Fact Remain With Respect To Whether Mr. Acosta Was Subjected To A Substantial Risk Of Serious Harm[2]

With respect to the first <u>Farmer v. Brennan</u> prong, it is undisputed that

Appellees knew of Mr. Acosta's elbow condition.  Therefore, the only question

here is whether Mr. Acosta was subjected to a substantial risk of serious harm.

And as the relevant case law makes clear, the condition only needs to be serious,

not life-threatening, to make out a successful <u>Bivens</u> claim.  <u>See</u>, <u>e.g.</u>, Gutierrez,

111 F.3d at 1370.

In <u>Estelle</u>, the serious medical need at issue was lower back pain, and "the

Court never questioned that the inmate's allegations of severe pain from his back

injury were sufficiently serious to support his Eighth Amendment claim."

<u>Gutierrez</u>, 111 F.3d at 1371 (citing to <u>Estelle</u>, 429 U.S. at 107).  Other medical

---

[2] The District Court decision is silent with respect to the question of whether Mr. Acosta was subjected to a substantial risk of serious harm — the decision reached only the question of deliberate indifference, which is an alternative means of describing the second prong of the <u>Farmer v. Brennan</u> test, namely whether the Appellees disregarded the risk to Mr. Acosta by failing to take reasonable measures to abate his condition.  511 U.S. at 840, 847.

conditions that have been found to be sufficiently serious to qualify under the

Bivens analysis include: ulcers, Greeno v. Daley, 414 F.3d 645, 651 (7th Cir.

2005); gallstones, Brown, 514 F.3d at 1284; and cysts, Gutierrez, 111 F. 3d at

1373-4 (dismissing on grounds of qualified immunity, but holding that a cyst was

sufficient to be considered a serious medical condition).

In Gutierrez, the court further noted that it was improper to make

"unwarranted inferences concerning the nature of Gutierrez' condition."  111 F.3d

at 1370.  Here, much was made of the fact that Mr. Acosta pitches for a softball

team within the prison.  (4/24/2012 Opinion and Order, A-251.)  However, Mr.

Acosta submitted an uncontested explanation as to why that activity is not

inconsistent with a claim of a serious medical condition (stating that "the type of

softball Plaintiff played was a show underhand pitch game, in which Plaintiff,

despite the limited flexibility of his elbow, could still pitch a softball").  (2/22/2010

Opposition to Summary Judgment, A-233.)  At worst, the softball playing raises a

contested factual issue, as it stands in direct opposition not only to the assertions

made by Mr. Acosta — including that he cannot do a whole host of everyday

activities with his dominant right hand, including eating, writing, shaving, wiping

himself, and pushing himself to a sitting position — but also the opinions of the

BOP doctors and consultants who examined Mr. Acosta and recommended

surgery.  This record demonstrates that there is a contested fact issue, one that at

least requires discovery, as to whether the appellees' actions resulted in needless suffering in violation of <u>Bivens</u>. <u>See</u> <u>Gutierrez</u>, 111 F.3d at 1371 (citing to <u>Estelle</u>, 429 U.S. at 106).

> **b.     Material Issues Of Fact Remain With Respect To Whether Appellees Failed To Take Reasonable Measures To Abate Mr. Acosta's Condition**

Material issues of fact also remain regarding whether the actions of Appellees failed to take reasonable measures to abate Mr. Acosta's condition. First, to demonstrate failure to take reasonable measures, "a prisoner is not required to show that he was literally ignored." <u>Greeno</u>, 414 F.3d at 653 (quoting <u>Sherrod v. Lingle</u>, 223 F.3d 605, 611 (7th Cir. 2000). In fact, that showing can be satisfied by intentional interference by Appellees with the treatment for Mr. Acosta once the treatment is prescribed. <u>See</u> <u>Estelle</u>, 429 U.S. at 105; <u>Arocho v. Nafziger</u>, 367 Fed. Appx. 942 (10th Cir. 2010) (continuing delay in providing treatment for liver disease constitutes cognizable claim for deliberate indifference).

Here, the record discloses a material question of fact as to whether Appellees intentionally interfered with the treatment that had been prescribed for Mr. Acosta. As a starting point, the URC had already approved Mr. Acosta's surgery request and put in for a transfer so that such surgery could occur. (10/10/2006 Regional Response, A-37: "[o]n June 5, 2006, your case was reviewed by the Regional Utilization Review Committee … [y]our arm deformity … will require extensive

surgery and post surgical rehabilitation … [and] your care is best rendered at a Federal Medical Center.")  Therefore, a reasonable finder of fact could find that, by subsequently denying the transfer request, Nelson and Hernandez-Ricoff intentionally interfered in the prescribed treatment.[3]  The record does not indicate anywhere that the treatment Acosta was approved for by the URC was not available at the Medical Referral Center, notwithstanding Dr. Hernandez-Ricoff's conclusory assertion in her declaration claiming that she "denied that request based upon … the scope of medical services provided by the BOP."  (Undated Hernandez-Ricoff Decl., A-131.)

Further, Dr. Hernandez-Ricoff's claim that "limitation in inmate Acosta's range of motion were not affecting his activities of daily living" (Id.), is directly contradicted by Mr. Acosta's own uncontradicted declaration, in which he unequivocally states that "my limited range of motion in my right elbow affects activities that are apart of any human beings [sic.] daily living."  (2/22/2010 Acosta

---

[3] Dr. Hernandez-Ricoff appears to have summarily relied on her interpretation of the BOP policy regarding Level C procedures to deny the care, even though it countermanded the URC's finding (and there is nothing in the BOP policy in the record indicating that URC determinations are even reviewable by Dr. Hernandez-Ricoff).  Additionally, nowhere in the record is there evidence that Hernandez-Ricoff reviewed Mr. Acosta's entire medical file or performed sufficient diligence to confirm that, in fact, Mr. Acosta's condition was not a Level B condition, which would not have required even URC review.  (1/15/2005 Program Statement P6031.01, A-136 – A-137.)  She merely states that she "denied the request based upon available medical information," without explaining what that available medical information was.  (Undated Hernandez-Ricoff Decl., A-130 – A-131.)

Decl., A-239.)  Mr. Acosta's declaration is also the only detailed information

regarding Mr. Acosta's limitations anywhere in the record, and it raises material

issues of fact on deliberate indifference.  According to the record here, none of the

information available to Dr. Hernandez-Ricoff provided any detail regarding Mr.

Acosta's "activities of daily living."

On this record, summary judgment was improper, and this case should be

reversed and remanded for discovery and/or trial.

## IV.   THERE IS A MATERIAL ISSUE OF FACT REGARDING WHETHER APPELLEES ARE ENTITLED TO QUALIFIED IMMUNITY[4]

The standard for qualified immunity in a Bivens action is whether

Appellant's allegations "could sustain a finding that [Appellees'] conduct violated

clearly established law."  See Farmer v. Moritsugu, 163 F.3d 610, 614 (D.C. Cir.

1998).  That "clearly established law" with respect to medical Bivens actions is

"deliberate indifference."  Id.  This "deliberate indifference" standard for qualified

immunity is the same as the second Farmer v. Brennan prong discussed above in

Section III.b, supra, namely whether Appellees intentionally interfered in Mr.

Acosta's prescribed treatment.  See Estelle, 429 U.S. at 104-5; Farmer v. Brennan,

---

[4] The District Court did not reach qualified immunity, but noted its view that
Appellees had an "equally persuasive argument for dismissal on the ground of
qualified immunity."  (4/24/2012 Opinion and Order, A-255 at FN 4.)  This is
presumably because the District Court's opinion focused exclusively on the
"deliberate indifference" standard in context of the second Farmer v. Brennan
prong.

511 U.S. at 840.  Therefore, for the same reasons, a grant of summary judgment with respect to qualified immunity was not proper here.

## CONCLUSION

For the foregoing reasons, the District Court's grant of summary judgment should be reversed, and the action should be remanded to the District Court for either discovery, trial, or other proceedings consistent with such a reversal.

Dated: July 8, 2013                    Respectfully submitted,


/s/ Rena Andoh
Rena Andoh
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1300 I Street, N.W.
Washington, DC 20005
Telephone: (202) 218-0000

-24-

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 5,474 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

Dated: July 8, 2013                      Respectfully submitted,

                                        /s/ Rena Andoh
                                        _____
                                        Rena Andoh
                                        SHEPPARD MULLIN RICHTER & HAMPTON LLP
                                        1300 I Street, N.W.
                                        Washington, DC 20005
                                        Telephone: (202) 218-0000

## <u>CERTIFICATE OF SERVICE & CM/ECF FILING</u>

### 12-5173

I hereby certify that I caused the foregoing Amicus Curiae Brief of Plaintiff-Appellant to be served on counsel via Electronic Mail generated by the Court's electronic filing system (CM/ECF) with a Notice of Docket Activity pursuant to Local Appellate Rule 25.1:

I certify that an electronic copy was uploaded to the Court's electronic filing system.   Eight hard copies of the foregoing Amicus Curiae Brief of Plaintiff-Appellant were sent to the Clerk's Office by hand delivery to:

Clerk of Court
United States Court of Appeals, District of Columbia Circuit
United States Courthouse
333 Constitution Avenue, NW
Washington, DC 20001
202-216-7300

on this 8th day of July 2013.

/s/ Ramiro Honeywell
Ramiro Honeywell